Ada E. YARRINGTON, Respondent,

v.

Arthur Irvin LININGER, Edith Wareham and Elsie Bucholz, Appellants.

No. 46942.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Shoemaker & Reital, Elmer Reital, Brown, Douglas & Brown, R. A. Brown, St. Joseph, for appellants, Edith Wareham and Elsie Bucholz.

E. L. Redman, Albany, for respondent.

STOCKARD, Commissioner.

Defendants Edith Wareham and Elsie Bucholz have appealed from a judgment for plaintiff in the amount of $25,000 in an action for damages resulting from a three-

car automobile collision. The judgment was also entered against defendant Arthur Irvin Lininger, but his appeal, although timely taken, has not been perfected.

■ Plaintiff's case against Lininger was submitted to the jury on primary negligence; her case against Mrs. Elsie Bucholz was submitted upon negligence under the humanitarian rule; and her case against Mrs. Edith Wareham was based on the contention that Mrs. Wareham and Mrs. Bucholz were engaged in a joint enterprise. Appellants contend that the trial court erred in refusing to direct a verdict in their favor because no submissible case was made under the humanitarian rule, and in giving instruction 1 submitting humanitarian negligence because the issues there submitted were not supported by substantial evidence. We shall review the evidence from a standpoint favorable to plaintiff and give her the benefit of any part of defendants' evidence favorable to her which is not contradicted by her own testimony and not contrary to her theory of recovery, and we shall also give her the benefit of all favorable inferences arising therefrom. Ukman v. Hoover Motor Express Co., Mo. Sup., 269 S.W.2d 35, 37.

The collision occurred about 3:00 o'clock in the afternoon of October 16, 1956, on U. S. Highway 136 in Gentry County about 1.3 miles north of the intersection with Highway 4. The weather was clear and sunny, and the highway was dry. At and near the scene of the collision the highway ran in a north-south direction, and the concrete pavement was 18 feet in width with "lips" on each side approximately one foot in width, resulting in an overall width of at least 20 feet. The shoulders on each side were firm, free from obstructions, and 11 to 12 feet in width. North of the place of collision the highway inclined to the crest of a hill or slope approximately 341 feet distant. To the south the highway was not completely level, but there was a clear unobstructed view for a substantial distance.

Plaintiff, a widow age 63, was driving her Ford automobile at a speed of approximately 35 miles an hour southward on U. S. Highway 136. At no time prior to the collision was her automobile outside of the west lane of the highway. Mrs. Bucholz was driving an Oldsmobile owned by her sister, Mrs. Wareham, northward on the same highway at 35 to 40 miles an hour. There was some testimony that prior to the collision she was close to or "a shade" west of the center line, but other testimony was that prior to the collision she was not outside of the east lane of the highway. Arthur Lininger, operating a Chevrolet automobile, had been following plaintiff for some distance, and as plaintiff reached the crest of the hill north of the place of collision he undertook to pass. He had "held back" preparing to pass, and when he turned into the east lane to go around plaintiff he was driving about 45 miles an hour. Mrs. Bucholz saw the tops of plaintiff's and Lininger's automobiles as they came over the crest of the hill, and since it was 341 feet from the crest of the hill to the point of collision, Mrs. Bucholz was somewhere in the vicinity of 682 feet from the automobiles of plaintiff and Lininger when she first saw them. The Lininger automobile proceeded southward "down the center" of the highway gaining speed and always to the east of plaintiff's automobile. Plaintiff continued southward in her lane of the highway without any change of speed or course of travel, and Mrs. Bucholz proceeded northward without materially slackening her speed or changing her course of travel. We inject at this point that Mrs. Bucholz testified that Lininger, in attempting to pass plaintiff, drove his car completely over onto the east shoulder, and that she could not turn right because he was there and she could not turn left because of plaintiff's automobile so she stopped her automobile on the highway. She further testified that when Lininger got close to her he suddenly turned across in front of her stopped automobile and tried to go between her automobile and that of plaintiff. This, however, is not

the most favorable evidence to plaintiff and is not in accord with her theory of recovery. All three automobiles met at approximately the same place on the highway, and their positions at the instant of the collisions were as follows: The front portions of the Lininger automobile and the Oldsmobile operated by Mrs. Bucholz had passed each other, and the left front fender of the Oldsmobile struck a glancing blow against the left rear fender of the Lininger automobile. The right rear portion of the Lininger automobile was even with the left front door of plaintiff's Ford, and the force of the glancing blow by the Oldsmobile against the Lininger automobile deflected the rear portion of it into and against the left front door of plaintiff's Ford, and by reason thereof the Ford careened off the highway, across the ditch, through a fence and into a field where it struck a tree. Plaintiff suffered substantial and serious injuries.

Mrs. Bucholz was at all times material fully aware of the situation ahead of her. She saw the two automobiles proceeding toward her with plaintiff in her own lane and Lininger in the east or improper lane for southbound traffic. Plaintiff suffered from retrograde amnesia and could remember nothing from the time she started down the hill unaware of the presence of the Lininger automobile until a substantial period after the accident. When Lininger started around her and up to the time of the collision she did not slow or turn her automobile to the west to make room for Lininger to pass or to get back into his proper lane, and she did nothing to indicate that she was aware of the impending danger.

■■■ The first and basic fact of liability, "it might be denominated the chief one," under the humanitarian rule is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484. It is only when imminent peril arises that the humanitarian rule seizes upon the then existing situation, in effect *"blotting out primary or antecedent negligence,"* Downing v. Dixon, Mo.App., 314

S.W.2d 927, 930, and imposes a duty *thereafter* to exercise the required degree of care to avoid the threatened injury. McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707; Wilson v. Toliver, Mo.Sup., 305 S.W.2d 423, 429; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680. Whatever transpires from the standpoint of either plaintiff or defendant prior to the time that plaintiff enters into a position of imminent peril does not affect the rights of the parties thereafter. Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 571. In other words, regardless of whether or not the defendant had some duty to act or refrain from acting in the exercise of the required degree of care based on primary negligence, under the humanitarian rule there arises no duty whatever to take or refrain from taking any action unless and until the plaintiff comes into what is called a position of imminent peril. Paydon v. Globus, Mo.Sup., 262 S.W.2d 601; East v. McMenamy, Mo.Sup., 266 S.W.2d 728; Ukman v. Hoover Motor Express Co., supra; Schmidt v. Allen, Mo.Sup., 303 S.W.2d 652; Davis v. St. Louis Public Service Company, Mo.Sup., 316 S.W.2d 494. In addition, when it is shown by the evidence that the plaintiff was in a position of imminent peril, in order to impose liability under humanitarian rule, it must also be shown that defendant, after receiving actual or constructive notice of the imminent peril, then "had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others," and that he failed to exercise the required care to avert such injury. Banks v. Morris & Co., supra at page 484, of 257 S.W.; Shirley v. Norfleet, Mo.Sup., 315 S.W.2d 715.

It is, therefore, immediately apparent that the first decisive issue in this case is whether plaintiff submitted a set of facts from which the jury could find that she came into a position of imminent peril, as that term is defined and used in connection with the humanitarian rule. In her verdict-directing instruction, after hypothesizing that plain-

tiff was operating her automobile south on the highway in her proper lane; that Lininger was overtaking and trying to pass her, and that in doing so was driving his automobile "to the left of plaintiff's automobile and on the east of the traveled portion of said highway;" that Mrs. Bucholz was operating her automobile north on said highway and was approaching and meeting the vehicles of plaintiff and Lininger, plaintiff then submitted that "if you * * * further find that and believe that * * * Lininger and [Mrs.]Bucholz in meeting on said highway attempted to meet and pass each other with said vehicles to the left and in close proximity to plaintiff's automobile proceeding south on said highway, * * * and that in so meeting and attempting to pass each other the Oldsmobile automobile being driven by * * * [Mrs.] Bucholz collided with the motor vehicle driven by * * * Lininger and that said collision deflected the motor vehicle of * * * Lininger, causing the same to strike and collide with the automobile of plaintiff, deflecting the same and causing it to run off the road and highway * * * and if you further find and believe * * * that at and prior to the time plaintiff and her said automobile were struck and collided with on said highway, plaintiff became and was in a position of imminent peril of being struck and plaintiff injured thereby, and that plaintiff was oblivious to her said danger * * * and that * * * [Mrs.] Bucholz saw, or by the exercise of the highest degree of care, could have seen plaintiff in such position of imminent peril and oblivious to her danger * * * in time for * * * [Mrs.] Bucholz, thereafter, with the exercise of the highest degree of care, with the means and appliances then at hand, with reasonable safety to said Oldsmobile automobile, herself, and other persons * * * to have thereafter sufficiently slackened the speed of said Oldsmobile automobile and sufficiently swerved and turned the same to the right * * * [to] have prevented said Oldsmobile automobile from coming in contact with the motor vehicle of * * * Lininger and have avoided the collision between the motor vehicle of · * * * Lininger and plaintiff and her said motor vehicle * * * and that * * * [Mrs.] Bucholz failed to do so, and in so failing * * * [Mrs.] Bucholz was negligent, * * * *" then the verdict should be for plaintiff and against Mrs. Bucholz.

As a general rule the place where one comes into a position of imminent peril in a particular case is for the jury to determine, Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 923. But in a humanitarian case, as in other actions, the burden is on the plaintiff to establish by substantial evidence of probative value, or by the reasonable inferences therefrom, every essential element of his theory of submission, Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 787, and the plaintiff must present such evidence from which a jury may reasonably find where the plaintiff did in fact come into a position of imminent peril. "Evidence that is merely speculative, a guess or conjecture is not sufficient for a jury to find where the position of imminent peril began." Paydon v. Globus, Mo.Sup., 262 S.W.2d 601, 603.

The imminent peril referred to in the humanitarian rule is that position of danger to the plaintiff, whether or not plaintiff was negligent in getting there, in which by reason of the then existing circumstances, if unchanged, injury to him is reasonably certain and not a mere possibility contingent on some other occurrence. The courts have said that "The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 160, 213 S.W.2d 420, 421; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583. For other but substantially the same statements, see Hendrick v. Kurn, 352 Mo. 848, 179 S.W.

2d 717, 719; Stephens v. Thompson, Mo. Sup., 293 S.W.2d 392, 393, 395; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 34; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 75; Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699; Homfeld v. Wilcoxon, Mo.Sup., 304 S.W.2d 806, 809; Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563, 566. What constitutes a position of imminent peril varies according to the circumstances. "In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it." Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300. See also Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. 827, 288 S.W.2d 926, 929; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495. But, when the plaintiff is oblivious, it has been said that the zone of imminent peril is widened to that point where it was or should have been reasonably apparent to the defendant in the exercise of the required degree of care that the plaintiff was oblivious of the approach of defendant's moving vehicle and was intent on continuing across its path. Wabash Railroad Company v. Dannen Mills, Inc., supra at page 929, of 288 S.W.2d.

We have been referred to no case submitted under the humanitarian rule having a similar factual situation or where a plaintiff was held to have been in a position of imminent peril except on the basis that (A) he was then in the path of defendant's moving vehicle, or (B) he was approaching the path of defendant's moving vehicle and (1) was moving at such speed that he could not by his own efforts stop short of defendant's path, or (2) it was or should have been reasonably apparent to the defendant that plaintiff was oblivious to the approach of defendant's moving vehicle and was intent on continuing on across its path. But plaintiff's theory in this case,

as submitted in her instruction, is that her automobile was never in or approaching the path of the moving vehicle operated by Mrs. Bucholz, and that she was never in or approaching the path of the Lininger automobile until after it was hit by the Bucholz automobile, and then she was in the course of its deflected path created or caused by its collision with the Bucholz automobile. Note the precise submission in her verdict-directing instruction: "Lininger and * * * [Mrs.] Bucholz in meeting on said highway attempted to meet and pass each other *with said vehicles to the left and in close proximity to plaintiff's automobile* proceeding south on said highway, * * * and that in so meeting and attempting to pass each other the Oldsmobile automobile being driven by * * * [Mrs.] Bucholz collided with the motor vehicle driven by * * * Lininger and that said collision *deflected* the motor vehicle of * * * Linger, *causing the same to strike and collide with the automobile of plaintiff * * *"* (emphasis added). At all times prior to the collision between the Bucholz and Lininger automobiles the road ahead of plaintiff and the path in which she intended to travel was free and clear from traffic and no vehicle was approaching that path. Also, prior to the collision between the Bucholz and Lininger automobiles no vehicle was headed toward plaintiff so that if she or the driver of that vehicle did not slacken or change speed or course of travel a colllision with her automobile was imminent. The peril to plaintiff was contingent on the subsequent occurrence of something else resulting in a change of the circumstances, which in this case was the sidewise deflection of the rear portion of the Lininger automobile as the result of its collision with the Bucholz automobile. As stated in McClanahan v. St. Louis Public Service Co., supra [363 Mo. 500, 251 S.W.2d 706], " 'something would have to happen other than that which was then happening before injury would befall plaintiff.' " Therefore, prior to the collision between the Bucholz and Lininger automobiles the peril of plain-

tiff was not "certain, immediate and impending," but it was "remote, uncertain or contingent." Under the hypothesized facts, plaintiff did not enter into a position of imminent peril within the meaning of that term as used in the application of the humanitarian rule until and when the rear portion of the Lininger automobile was caused to start its sidewise deflecting movement toward plaintiff's automobile. It is obvious that thereafter there was no action that Mrs. Bucholz could have taken with the means at hand to have prevented the collision of the Lininger automobile with that of plaintiff. Therefore, the humanitarian rule does not apply to the factual situation submitted by plaintiff in her verdict-directing instruction. East v. Mc-Menamy, Mo.Sup., 266 S.W.2d 728, 732.

Plaintiff relies primarily on the cases which hold that the zone of imminent peril is widened when the plaintiff is shown to have been oblivious, and in her brief she then asks: "What more perilous situation could plaintiff have been in than to have a car coming from her rear in the process of passing her at the time when she was meeting appellant Bucholz' Oldsmobile?" There is no question but that this presented a dangerous situation; in fact it was equally as dangerous as the position of plaintiff in McClanahan v. St. Louis Public Service Co., supra, where it was said that "plaintiff was in a precarious position, indeed one fraught with perilous possibilities." But every dangerous situation does not necessarily result in the plaintiff being in a position of imminent peril, and the antecedent negligence of Mrs. Bucholz may not be taken into consideration in determining whether she was negligent under the humanitarian rule. State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S.W.2d 798, 801. It is extremely important to recognize and keep in mind the basic difference between primary negligence and humanitarian negligence, and that "not every state of facts resulting in injuries from moving objects gives rise to * * * a cause of action" under the humanitarian rule. Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233, 236.

In this case the factual situation as hypothesized did not present a case under the humanitarian rule, and the humanitarian submission was prejudicial to defendants Bucholz and Wareham because it deprived them of the right to submit the defense of contributory negligence on the part of plaintiff in not seeing Lininger attempting to pass her and in failing to take such action as slowing or swerving to prevent the collision.

We do not now rule that plaintiff could not in any event have a humanitarian submission against Mrs. Bucholz, and it is apparent that under the evidence she could have had a proper submission based on primary negligence. " 'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.' " East v. McMenamy, supra at page 732, of 266 S.W.2d.

Plaintiff sought to hold several alleged joint tort-feasors liable for a single injury, and there must be only one final judgment in the same amount against all who are held liable. Defendant Arthur Irvin Lininger did not perfect his appeal. Under plaintiff's theory the judgment against Mrs. Wareham cannot stand unless there is a valid judgment against Mrs. Bucholz, and they both assign as error on this appeal that the amount of the verdict is excessive. Therefore, we cannot apply the rule adopted in Hoelzel v. Chicago, R. I.

& P. R. Co., 337 Mo. 61, 85 S.W.2d 126, of holding the verdict against Lininger in abeyance as to both liability and amount of damages and directing a retrial as to the appellants on the issue of liability only. See Rosenkoetter v. Fleer, Mo.Sup., 155 S.W.2d 157. At most, the verdict against Lininger as to liability can be held.

The judgment is reversed and the cause remanded, with directions (1) to hold in abeyance the verdict as to the liability of defendant Arthur Irvin Lininger; (2) for a new trial on the issue of liability as to defendants Mrs. Edith Wareham and Mrs. Elsie Bucholz, and (3) for a new trial on the amount of damages as to all defendants.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and BROADDUS, Special Judge, concur.