Clifton DAVIS and Lela Heath, Appellants,

v.

QUALITY OIL COMPANY, Respondent.

No. 48636.

Supreme Court of Missouri,

Division No. 2.

Feb. 12, 1962.

James E. Curry, Ava, M. J. Huffman, Hartville, Garner Moody, Mansfield, for appellants.

Chinn, White & Dickey, Springfield, for respondents.

STOCKARD, Commissioner.

Clifton Davis and Lela Heath, the divorced parents of the deceased, Leroy Davis, have appealed from the judgment entered on the jury's verdict in favor of Quality Oil Company in their action for $25,000 for the wrongful death of their son.

Appellants' son died as the result of injuries sustained when the automobile

he was operating was struck by respondent's truck. The case was submitted to the jury on humanitarian negligence of respondent's driver in failing to stop or slacken the speed of the truck. Appellants' only contention on this appeal pertains to the alleged error in an instruction. Respondent contends, however, that appellants did not make a submissible humanitarian case and that its motion for a directed verdict at the close of all the evidence should have been sustained. If this is true, the error in the instruction, if any, is immaterial. We shall review the evidence from a standpoint favorable to appellants and give them the benefit of any part of respondent's evidence favorable to them which is not contradicted by their own testimony and not contrary to their theory of recovery, and we shall give them the benefit of all favorable inferences arising therefrom. Yarrington v. Lininger, Mo.Sup., 327 S.W.2d 104.

Leroy Davis and two companions left the Ava, Missouri High School about 12:30 o'clock in the afternoon of October 23, 1958 and drove to Mansfield, Missouri, about fifteen miles away. Leroy was driving, and in Mansfield he turned west on the "business route" of U. S. Highway 60 and drove to an intersection with "bypass" U. S. Highway 60 about one half mile west of town. This intersection forms a "V" with the apex to the west, and it appears from photographs in evidence that the angle between the highways is about 45 degrees, or perhaps less. The bypass is located north of the business route. East of the intersection, but near it, is a connecting road running almost north and south between the bypass and the business route. Westbound traffic on the business route is directed to use this connecting road to get to the bypass. Leroy did not turn onto the connecting road, but improperly continued on the business route to the "V" intersection, and according to Donald Cunningham, a passenger in the automobile, he stopped before entering the bypass. Marlin Jen-

kins, the other passenger, said that Leroy "slowed down or nearly stopped," that he "may have stopped," and that he shifted gears to "low or second."

Earlin L. Friend was operating respondent's three axle tractor-trailer truck about fifty miles an hour in the westbound lane of the bypass and approaching the intersection from the east. The collision occurred, however, in the eastbound lane of the bypass after Leroy, in attempting to turn back east on the bypass, drove his automobile onto the bypass in a continuous circular sweep to the right into the westbound lane and to within nine inches of the north edge of the pavement. At that time the automobile was completely in the westbound lane but headed eastward, and it was moving easterly and southeasterly on a curve. Leroy continued his circular movement back into the eastbound lane where the automobile was struck by the truck which, in an effort to miss the automobile, had swerved sharply into the eastbound lane immediately prior to the collision. The speed of the automobile while making this turn is not shown, but Marlin said that Leroy "was going faster in the turn" than when he came up to the intersection. Donald said that when the automobile was in the westbound lane Leroy "gunned" it and "peeled" the tires. Either because of the speed of the automobile or the spinning of the wheels in an attempted acceleration it left tire marks on the pavement starting in the westbound lane and circling to the east and southeast back into the eastbound lane for a distance of about 42 feet to the point of impact. It is not definitely shown where the truck was when Leroy started his circular turn. Marlin said that when the automobile was stopped, or nearly stopped, the truck was "approximately where the culvert was in the road there," but this distance is not shown except by way of inference that it was "400 or 500 or maybe 600 feet" away. Donald said that when Leroy "gunned" his automobile, that is, when it was completely in the westbound lane but headed east,

the truck was at the connecting road about 250 or 300 feet away, but a highway patrolman estimated the connecting road to be 400 feet away. Respondent's truck slid its wheels leaving skid marks 168 to 170 feet in length. These marks started in the westbound lane and extended in a straight line, and then veered sharply to the left into the eastbound lane to the point of impact. At the time of the collision the truck and the automobile admittedly were completely in the eastbound lane.

It is not at all clear from appellants' verdict directing instruction just what was their theory as to when Leroy entered into a position of imminent peril. Without hypothesizing any facts as to the movement or location of Leroy's automobile or the speed or location of respondent's truck, the instruction abstractly submitted, in substance, that if the jury found that Earlin Friend saw or should have seen Leroy in a position of imminent peril within a reasonable time for Earlin Friend thereafter to have stopped the truck or slackened its speed before striking the automobile, and could thus have avoided injuring and killing Leroy, they should find for plaintiffs. The sufficiency of this instruction is not an issue on this appeal.

From all the facts in the case including the location of the skid and tire marks of both vehicles, the admitted point of impact, and the damage to the truck and the automobile resulting from the collision, it is evident that after Leroy's automobile crossed the bypass into the westbound lane it returned to the eastbound lane of the bypass which was out of the path the truck would have followed if it had not swerved to the left immediately before impact. The cross-examination of Earlin Friend indicates that it was appellants' theory that if the truck had continued on in the westbound lane without swerving to the left Leroy would have moved out of the truck's path and the collision could not have occurred. We must, therefore, determine whether a jury could reasonably find that Leroy entered into a position of imminent peril, as that term is used in the application of the humanitarian rule, and if so, whether after Earlin Friend received actual or constructive notice thereof, he had the ability thereafter, with the means at hand by stopping the truck or slackening its speed, to have averted the impending injury without injury to himself.

The constitutive elements of the humanitarian rule have been set out many times by this court. See the discussion and cases cited in § 13.5 Missouri Civil Instructions, p. 189, published by the Missouri Bar. We shall briefly restate them, for the most part as set out in Yarrington v. Lininger, Mo.Sup., 327 S.W.2d 104, and apply the applicable principles to the facts of this case.

The first and basic fact of liability, "It might be denominated the chief one," under the humanitarian rule is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484. It is only when imminent peril arises that the humanitarian rule seizes upon the then existing situation, in effect *"blotting out primary or antecedent negligence,"* Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930, and imposes a duty *thereafter* to exercise the required degree of care to avoid the threatened injury. McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707; Wilson v. Toliver, Mo.Sup., 305 S.W.2d 423, 429. In this case, whatever transpired from the standpoint of either Leroy or Earlin Friend prior to the time that Leroy entered into a position of imminent peril, if he did, does not affect the right of the parties thereafter. Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 571. In other words, regardless of whether or not Earlin Friend had some duty to act or refrain from acting in the exercise of the required degree of care based on primary negligence, under the humanitarian rule there arose no duty whatever on his part to take or refrain from taking any

action unless and until Leroy came into what is called a position of imminent peril. Paydon v. Globus, Mo.Sup., 262 S.W.2d 601; Schmidt v. Allen, Mo.Sup., 303 S.W. 2d 652; Davis v. St. Louis Public Service Company, Mo.Sup., 316 S.W.2d 494. In addition, if it is shown by the evidence that Leroy was in a position of imminent peril, in order to impose liability on respondent under the humanitarian rule, it is necessary that the evidence also show that Earlin Friend, after receiving actual or constructive notice of the imminent peril, then "had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others," and that he failed to exercise the required care to avert such injury. Banks v. Morris & Co., supra at page 484 of 257 S.W.; Shirley v. Norfleet, Mo.Sup. 315 S.W.2d 715.

"The imminent peril referred to in the humanitarian rule is that position of danger to the plaintiff, whether or not plaintiff was negligent in getting there, in which by reason of the then existing circumstances, *if unchanged,* injury to him is reasonably certain *and not a mere possibility contingent on some other occurrence.* The courts have said that 'The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril.'" (Italics added). Yarrington v. Lininger, supra at p. 109 of 327 S.W.2d.

Although, as previously noted, appellants did not hypothesize the facts upon which the jury was authorized to find that Leroy came into a position of imminent peril, it is evident that they contend Leroy came into a position of peril at some time after he left, or immediately upon leaving, his position of safety when stopped or almost stopped. He obviously was not in a position of peril prior to that time. " 'In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it.' * * * But, when the plaintiff is oblivious, it has been said that the zone of imminent peril is widened to that point where it was or should have been reasonably apparent to the defendant in the exercise of the required degree of care that the plaintiff was oblivious of the approach of defendant's moving vehicle and was intent on continuing across its path." Yarrington v. Lininger, supra at p. 110 of 327 S.W.2d. Appellants do not rely on obliviousness, and under the facts of this case it is immaterial whether or not Leroy was oblivious of the approach of the truck which was in plain and unobstructed view. A jury could reasonably find that once he started his continuous circular sweep he could not then have stopped short of the projected path of the truck, and that this would or should have been apparent to Earlin Friend. Therefore, if he ever entered a position of imminent peril he did so when he started his continuous circular sweep across the bypass whether oblivious or foolhardy.

The evidence shows that from the time Leroy left his obvious position of safety, he started a course of travel which would take him into the path of the approaching truck *and then out of it* and into a position of safety in the east lane of the bypass unless something occurred which was not then occurring. From the testimony of appellant's witnesses as to the distance of respondent's truck from the intersection, and based on what actually happened, it appears that Leroy drove into *and then out* of the westbound lane of the bypass *before* the truck would have arrived even though Earlin Friend did nothing to stop or to slacken its speed. In this event he was not in a position of imminent peril within the meaning of the humanitarian rule either while approaching or while actually in the then intended path of the truck because Leroy was mov-

ing in a direction and at a speed which would remove him from that path of the moving vehicle before injury from it could befall him. The peril, if any, to Leroy arising from that situation was not certain, immediate and impending. It was contingent. As stated in McClanahan v. St. Louis Public Service Co., 360 Mo. 500, 251 S.W.2d 706, " 'something would have to happen other than that which was then happening before injury would befall [Leroy].' " In this case, before injury could befall Leroy, the direction of travel of the truck had to be changed, that is, Earlin Friend had to swerve sharply into the eastbound lane. In Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, this court pointed out that one who is not oblivious (but as previously noted obliviousness is not material here), does not come into a position of imminent peril when he is moving toward the path of a moving vehicle until he is directly in its path or so close thereto that he cannot stop short of its path, "or even if he is in its path with ability and time to get out of it." See also Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S.W.2d 954, and the somewhat related situations in Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, and in Homfield v. Wilcoxon, Mo.Sup., 304 S.W.2d 806.

■ Notwithstanding what we have already said concerning the fact that Leroy drove out of the projected path of the truck, it might be said when the evidence is considered most favorable to appellants that a jury possibly could find that when Leroy started his continuous circular sweep across the bypass and into the westbound lane, he did not have time to return to the eastbound lane before a collision would occur if the truck had stayed in the westbound lane. It may be that this requires some speculation, but we shall assume this was so and that the truck was at such distance from the intersection and traveling at such rate that when Leroy's automobile entered its path, or when it

should have been reasonably apparent to Earlin Friend that it was going to enter the truck's path, that unless the truck was stopped or its speed slackened, Leroy would not leave its path before a collision occurred. In this situation Leroy would have been in a position of imminent peril. However, if this is true, appellants' evidence conclusively establishes that by sliding the wheels and laying down skid marks Earlin Friend did slacken the speed of his truck, and that he did so sufficiently that Leroy did in fact leave and get out of the projected path of the truck. The collision occurred in the eastbound lane, not in the path of the truck, and it did not occur because Earlin Friend did not stop the truck or slacken its speed sufficiently to prevent colliding with the automobile in its path, but because he swerved the truck and changed the direction of its travel so that it struck Leroy's automobile *after* he had left the path, and *after* Leroy had returned to what would have been a position of safety but for that change of direction by the truck. Therefore, assuming that Leroy entered a position of imminent peril as above set out, appellants' evidence establishes as a matter of law that the failure of Earlin Friend to stop the truck or slacken its speed was not, and could not have been the proximate cause of the collision.

It may be that Earlin Friend was negligent in swerving to his left into the eastbound lane of the bypass so as to strike Leroy's automobile, but if so that was primary negligence, not humanitarian negligence. It is also evident that *after* Earlin Friend swerved his truck so that Leroy's automobile was then in the path of the truck in this new course of travel then Leroy was in imminent peril. But, the evidence discloses no possible action that Earlin Friend could have taken *thereafter* with the means at hand to avert the then pending collision. See East v. McMenamy, Mo.Sup., 266 S.W.2d 728, 732; Yarrington v. Lininger, supra at p. 111 of 327 S.W.2d. We must necessarily

conclude that the evidence, when considered most favorable to appellants, does not present a submissible case under the humanitarian rule based on the failure of Earlin Friend to stop the truck or slacken its speed. Presumably appellants abandoned such other grounds as failure to warn or failure to swerve, but in any event we do not see how a submissible case on either such ground could be made under the evidence in this case.

 Assuming that the instruction of which appellants complain on this appeal is erroneous, it might be contended that since we have noted that Earlin Friend may have been guilty of primary negligence, the judgment should be reversed and the cause remanded so that they may retry their case on primary negligence if so advised. See East v. McMenamy, supra; Cudney v. Midcontinent Airlines, 363 Mo. 922, 254 S.W.2d 662; Homfield v. Wilcoxon, supra; and Yarrington v. Lininger, supra. However, contributory negligence on the part of Leroy is a complete defense to an action against respondent based on the primary negligence of Earlin Friend. Section 537.080 RSMo 1959, V.A.M.S.; Fitzpatrick v. Kansas City Southern Ry. Co., 347 Mo. 57, 146 S.W.2d 560; McCloskey v. Renne, 225 Mo.App. 810, 37 S.W.2d 950. The evidence discloses that when Leroy was stopped or nearly stopped at the intersection the truck was in clear and unobstructed view, but that he then drove onto the through highway, and on the wrong side thereof, directly into the projected path of the truck. It was this negligent act which set in operation the subsequent chain of events which resulted in the collision and Leroy's death. Whether Leroy looked and did not see the truck or failed to look at all, under these facts he was contributorily negligent as a matter of law. Roberts v. Consolidated Paving & Material Co., 335 Mo. 6, 70 S.W.2d 543; Payne v. Smith, Mo.Sup., 322 S.W. 2d 764; Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626; Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621; Roux v. Pettus,

Mo.App., 293 S.W.2d 144. Therefore, if upon examination the instruction should be found to be erroneous, and if under the circumstances appellants would desire to retry their case on primary negligence, the contributory negligence of Leroy would make a directed verdict mandatory. For this reason we need not examine the instruction.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.