George H. FREESE, Plaintiff-Respondent,

v.

Charles Eugene KELLISON, Defendant-Appellant.

No. 34291.

Missouri Court of Appeals, St. Louis District.

June 20, 1972.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown; Daniel T. Rabbitt, Jr., Joseph B. Dickerson, Jr., Russell N. MacLeod, St. Louis, for defendant-appellant.

Niedner, Niedner & Moerschel, St. Charles, for plaintiff-respondent.

WEIER, Judge.

In this automobile negligence case plaintiff George H. Freese sued defendant Charles E. Kellison for $50,000.00 damages for the death of Ida Margaret Freese, plaintiff's passenger wife. Plaintiff, a left-turning driver, submitted his case on defendant's humanitarian negligence in failing to slacken speed, and received a verdict and judgment of $15,000.00. After an unavailing after-trial motion, defendant has appealed, contending the evidence failed to support plaintiff's humanitarian submission and the court erred when it failed to direct a verdict for defendant.

The collision occurred on April 12, 1969, on U.S. Highway 40–61, near Wentzville, at the west entrance of Cindy's Motel. At this point the highway had two twelve-foot lanes, one eastbound and the other westbound. The entrance was sixty feet wide. At about 6:00 p. m. o'clock, Mr. Freese approached this entrance from the west and slowed, preparing to make a left turn across the westbound lane in his Ford station wagon. He and his wife, who was seated in the right front seat, planned to eat dinner at the motel restaurant. He turned on his left-turn indicator lights, slowed to about two to three miles per hour, and turned left. He noticed an oncoming west-bound car "around 700 or so feet" east of his position on the highway but had no estimate of its speed. It was after observing the car at that distance that he made his left turn. In making his turn, he accelerated from 2 to 3 miles per hour to 6 to 10 miles per hour. Freese did not again see the oncoming vehicle after starting his turn, until the time of impact. From where he started his turn to the place where the collision occurred, his station wagon travelled in an arc about 55 to 60 feet. The rear of his vehicle was 5 to 6 feet off the pavement when struck by defendant's car. The impact occurred at the right front door and part of the right rear door. Because of injuries received at this time, Mrs. Freese died four days later.

Billie Joe Daffron, a truck driver and plaintiff's witness, had been following Mr. Freese for about two miles before the collision occurred. His speed was about 45 miles per hour. As Freese approached the motel driveway, he reduced speed to 7 to 8 miles per hour and turned on his left-turn blinker lights about 20 feet west of the driveway. Daffron, also slowing, turned

on his left-turn light and remained about 200 feet to the rear. He first observed the oncoming automobile of defendant about 300 feet east of the driveway. At that time the Freese vehicle was 4 feet off the hard surface of the highway. The westbound car started to skid, first partially into the trucker's or eastbound lane, about the width of a tire, and then the driver cut to his right and his car left the highway, striking the station wagon in the right front door and front half of the right rear door. This westbound car was approximately six feet off the highway at the time of collision. Neither he nor Mr. Freese had any estimate of the speed of defendant's car as it approached. On cross-examination, Daffron stated the defendant's car was skidding when he first saw it.

At the scene of the collision, shortly thereafter, Patrolman William Coy of the Missouri State Highway Patrol measured skid marks of the left tires of the Kellison car at 108 feet, commencing in the eastbound lane just over the center line and running thence across the westbound lane to the north edge of the highway. From this point scuff marks of the left tire continued across the gravel of the driveway 45 feet to the position occupied by the Kellison car past the point of impact. The skid marks left by the right tire on the pavement measured 60 feet before it left the pavement. The debris from the impact was 8 feet from the north edge of the pavement and 12 feet from the west edge of the driveway.

■ Upon an analysis of plaintiff's evidence and his theory of his lawsuit, it is obvious that plaintiff did not make a submissible humanitarian case against defendant because of failure to slacken speed, and hence it was error to submit his case to the jury on a humanitarian negligence instruction. From the time plaintiff left a position of safety, on his side of the highway, he crossed the path of the approaching car operated by defendant and then travelled out of it into a position of safety on the driveway of the motel. When plaintiff started across, according to his testimony, defendant was around 700 feet distant. He accelerated his speed and had cleared the highway by 5 to 6 feet when the collision occurred. Plaintiff's witness, the truck driver, placed plaintiff's car off the pavement and completely in the driveway when defendant was about 300 feet away. Obviously, according to his testimony and his theory of the case, plaintiff had cleared the westbound lane before the defendant's car would have arrived, if it had remained in that lane. In this state of the facts, plaintiff was not in a position of immediate danger, or imminent peril, in the intended path of defendant's car, because plaintiff was moving in a direction and at a speed which removed him from the path of the defendant's vehicle before a collision could occur. As in Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, the collision occurred not because the defendant driver did not stop or slacken the speed of his vehicle, but rather because he swerved and changed the direction of its travel so that it struck the claimant's automobile after claimant had left defendant's path and after plaintiff had driven to what would have been a position of safety, except for the change of direction of defendant's vehicle. And thus, as in *Davis* claimant's evidence established as a matter of law that the failure of the defendant to slacken speed "was not, and could not have been the proximate cause of the collision."

■■ The peril to Mrs. Freese arising from the oncoming vehicle of Mr. Kellison was not certain, immediate and impending. Before she could have been injured, Kellison would have had to change the direction of his car. The chance that she might be injured was merely a possibility contingent on some other occurrence. As has been said, "A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 421. Imminent peril, or immediate danger, the first and basic element in a humanitarian negligence case, must be certain, immediate and impending.

It may not be remote, uncertain or contingent. Hastings v. Coppage, Mo., 411 S. W.2d 232, 236 [6]; Ewen v. Spence, Mo. App., 405 S.W.2d 521, 524 [5].

We are aware that defendant and his passenger witness gave a different version of the facts. Kellison placed Freese only 150 feet in front when Freese made his left turn. Kellison testified he was going 65 miles per hour. His passenger estimated the speed at 50 to 70 miles per hour. Both place Freese off the highway at the time of impact. But the reliance upon a separation distance of 150 feet would not assist plaintiff. In the first place, it is contrary to and in direct conflict with plaintiff's testimony and the fundamental theory of his case. This being true, this evidence of distance may not be relied upon by plaintiff to make his case. Fisher v. Gunn, Mo., 270 S.W.2d 869, 874 [4]. Secondly, even if plaintiff could rely on it, his humanitarian submission could not be sustained because, after accepting the slowest estimate of his speed at 50 miles per hour, reaction time of three-fourths of a second, (Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788 [5]), would cause Kellison to travel almost 55 feet before he could apply brakes. There was no evidence of stopping distance, but, with brakes fully applied, Kellison travelled 108 feet on the pavement and then some unestimated distance on the driveway before impact.

We conclude that under any theory, plaintiff should not have submitted his case on the humanitarian negligence doctrine and that the use of the humanitarian negligence instruction was reversible error. We now turn to the contention by defendant that plaintiff was guilty of contributory negligence as a matter of law and that defendant's motion for directed verdict at the close of all the evidence should have been sustained.

A driver is charged with a duty to look. To look is to see, and a failure to see that which is plainly visible, constitutes negligence as a matter of law. Branscum v. Glaser, Mo., 234 S.W.2d 626, 627 [2]. A motorist who drives onto a through highway in the direct path of an oncoming vehicle in clear view, or turns left across a lane in which another vehicle approaches so closely as to constitute an immediate hazard, is negligent as a matter of law. Section 304.351, RSMo 1969, V.A.M.S.; Davis v. Quality Oil Company, supra, Mo., 353 S.W.2d 670, 676 [6]; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, 133 [1]. But the application of these rules is justified only if the approaching vehicle is so close that reasonable minds could not differ on the proposition that this vehicle constitutes an immediate hazard. If the distance is sufficient that reasonable minds might draw different conclusions as to the negligence of a left-turning driver, turning in front of an oncoming vehicle, then the plaintiff's negligence in turning when he did is a question for the jury. Steele v. Goosen, Mo., 329 S.W.2d 703, 708 [2]; Johnson v. Bush, Mo.App., 418 S.W.2d 601, 605 [6].

Although plaintiff's evidence differed from that of defendant in the case before us, its salient facts, developed in the testimony of plaintiff, placed Kellison around 700 feet from plaintiff at the time plaintiff made his left turn. Daffron corroborated this testimony, when he estimated Kellison to be 300 feet from plaintiff at the time plaintiff had cleared Kellison's west-bound lane and was completely on the driveway. Under these circumstances, plaintiff's contributory negligence is an issue for the jury, after hearing the evidence of both plaintiff and defendant.

Disposition must now be made of this appeal. Plaintiff in his petition alleged acts of primary negligence as well as humanitarian negligence. It may be that plaintiff can sustain in another trial a case of primary negligence, as to which defendant may desire to submit the defense of contributory negligence. "The furtherance of justice requires that a case should not

be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; * * *." Smith v. Terminal R. R. Ass'n. of St. Louis, Mo.App., 160 S.W.2d 476, 479. Although plaintiff submitted his case on humanitarian negligence, this appears to have been a misadventure brought about by a mistaken legal theory rather than an abandonment of primary negligence assignments to secure a strategic advantage. As to misadventure, see: Katz v. Slade, Mo., 460 S.W.2d 608, 614 [3]; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 423 [8]; East v. McMenamy, Mo., 266 S.W.2d 728, 732 [7–9]. As to abandonment for strategic advantage, see: Smith v. St. Louis Pub. Service Co., 364 Mo. 104, 259 S. W.2d 692. For a discussion of the authorities in this area, see: Grissom v. Handley, Mo.App., 410 S.W.2d 681, 690 [14–18]. Since it must be reversed for the giving of plaintiff's verdict-directing instruction, in the exercise of our discretion the case is remanded for trial of the issues on primary negligence. But on remand there is no justification to retry the issue of damages. Appellant makes no contention on this appeal that the verdict was excessive or that the error in giving the verdict-directing instruction in any manner affected the amount of damages assessed by the jury. Accordingly, there is no need for a new trial on that issue. Rule 83.13(c), V. A.M.R.; Woods v. Chinn, Mo.App., 224 S.W.2d 583, 587 [5]; Grissom v. Handley, supra, Mo.App., 410 S.W.2d 681, 691 [21].

The judgment is reversed and the cause remanded for a new trial on the issue of liability only. The trial court is further directed to hold in abeyance the verdict as to damages until the issue of defendant's liability is retried, and then to enter judgment against defendant for the amount of the verdict, $15,000.00, if defendant be found liable at retrial, but to discharge defendant if there be a verdict in his favor.

BRADY, C. J., and DOWD, SMITH and SIMEONE, JJ., concur.