Prett ROLLINS and Elfrida Rollins,
Appellants,

John Buford POSTLEWAIT, Respondent

No. 49049.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Louis Wagner, Kansas City, for appellants.

Sam B. Bartlett, Kansas City, for respondent, Popham, Thompson, Popham,. Trusty & Conway, Kansas City, of counsel.

COIL, Commissioner.

The parents of 2-year-old Ricky Rollins sought $25,000 as damages for his alleged wrongful death. Shortly after noon on October 20, 1958, Ricky was killed as the result of being run over by a truck owned and operated by John Postlewait, defendant below. A jury returned a defendant's verdict. Plaintiffs have appealed, contending that the verdict was contrary to and in conflict with the physical facts and was not supported by substantial evidence; that the trial court erred in giving instruction 6;

and that they were denied a fair trial by reason of the failure of veniremen to answer truthfully on voir dire examination.

Defendant, a farmer, parked his southbound pickup truck on the east side of two-way Forest Avenue in Kansas City approximately in front of a house numbered 1319. The truck's left front wheel was angled in toward or against the curb and the left rear wheel was one to two feet from the curb. Defendant was engaged in selling eggs. In maneuvering his truck preparatory to driving away from his parked location, one or both the left wheels passed over Ricky's body.

There were two versions of the facts. One tended to support the evidentiary theory submitted by plaintiffs to the effect that when defendant returned to his truck immediately before moving it, Ricky "was sitting on the east curb of Forest Avenue beside defendant's truck and that defendant backed said truck upon and over" him although defendant should have seen Ricky sitting there in a position of danger and could have avoided running over him by warning him or by stopping the truck but negligently failed to do so.

The other version of the facts tended to support defendant's evidentiary theory to the effect that when defendant returned to his truck from the west side of the street there were no children in the area around the truck, including the adjacent curb and parkway and sidewalk; that after defendant started the truck's motor, he looked out the driver's window and along the side of the truck and there were no persons visible; that he subsequently looked back over his right shoulder and through the rear glass of the cab which showed the street except that part immediately to the rear which was hidden by the truck itself, and he saw no person. Defendant said that he then turned the front wheels slightly to the right preparatory to backing in order to clear a northbound automobile which had been parked in front of his truck, and that, because his foot was then on the clutch pedal, the truck rolled forward four or five inches; he then let out the clutch pedal and backed six to eight feet at a speed of three or four miles an hour when he felt a vibration and at the same time heard a woman yell that he had run over a baby; he tried to stop the truck immediately but, nevertheless, backed another six feet; he turned off the motor but inasmuch as he still had his foot on the clutch pedal the truck again rolled forward for about two feet until it was stopped. Defendant said the top of the tail gate on his truck, which was up at the time, was 3½ or 4 feet above the ground and Ricky was not that tall.

The essential facts of defendant's version were corroborated by two witnesses. One was the driver of the car which had been parked in front of the truck, who observed the area immediately before the accident and saw no child or children thereabout until he heard the woman scream and thereafter saw the boy under the truck. The other was a woman sitting on a porch across the street from the truck who was an eyewitness to the casualty. She said that just as the truck started to move, she saw Ricky standing at the rear of the truck on the left side and almost against the tail gate; that the truck backed, knocked the boy to the street and, by the time it stopped, the left rear wheel had passed over the boy and the left front wheel was upon him until the truck rolled forward; and that when the truck finally stopped the body was under the truck's cab.

Plaintiffs contend in their point 2 that the verdict was contrary to and in conflict with the physical facts and was not supported by substantial evidence, and in point 4 that the verdict and judgment are against the weight of the evidence. We shall consider those contentions together.

As best we understand plaintiffs' supporting arguments, they seem to contend that inasmuch as the truck was parked on the wrong side of the street headed south in violation of certain ordinances introduced in evidence, and inasmuch as (so

plaintiffs say) the truck could have been driven away from its parked position without backing, despite the presence of a car parked in front of it, and because police found blood on the left front tire and none on the left rear tire, and because if defendant's version of the accident were true the boy's body necessarily would have been found behind the truck, defendant's evidence as to how the accident happened was in conflict with physical facts and did not amount to substantial evidence. It seems apparent that those arguments are unsound and the contentions are without merit. It is true that the truck was parked on the wrong side of a two-way street (it shortly theretofore had been one way) in violation of specified ordinances. Plaintiffs hypothesized those violations but did not submit negligence based thereon as a proximate cause and, further and in any event, the parking of the truck on the wrong side of the street and the lack of necessity, if so, for backing the truck could not have affected the substantiality of defendant's evidence or have tended to have made that evidence contrary to physical facts or unworthy of belief. Plaintiffs' contention that it was not possible that the accident happened as defendant and supporting witnesses said it did because of the fact that blood was found on the left front tire only, and the argument that if the boy had been behind the truck he would have remained behind the truck and there would have been blood on the left rear tire, are likewise falacious. It was not only possible but probable that if a 2-year-old boy was struck by the left rear of a backing truck he would have been knocked to the street and the left rear wheel might have run over him without getting blood on it, and, as the eyewitness testified, the left front wheel well might have been upon the boy until the truck again rolled forward, thus accounting for the position of the body under the truck and for the blood on the left front tire. It is entirely clear that the jury reasonably could have found that the accident occurred in accordance with defendant's evidentiary theory. And,

in any event, plaintiffs had the burden of proof; consequently, the jury was entitled to pass upon the credibility of plaintiffs' evidence and thus the defendant's verdict in this case need not have had evidentiary support. J. D. Streett & Co. v. Bone, Mo., 334 S.W.2d 5, 10 [7]. Whether the jury's verdict was against the weight of the evidence was a question for the trial court. Elliott v. Wescoat, Mo., 336 S.W.2d 649, 652 [4–7].

Plaintiffs' verdict-directing instruction 1 hypothesized that when defendant returned to the truck "there were three children playing in plain view on curb and parkway near said truck" and that at the time "defendant got in his truck and began backing it" Ricky "was sitting on the east curb * * * in front of or near 1319 Forest Avenue beside defendant's truck and that defendant backed said truck upon and over" him, and that defendant saw or in the exercise of commensurate care should have seen Ricky "sitting on said curb and in a position of danger of being struck by said truck" in time to have avoided striking him by warning Ricky or by stopping the truck, and that if defendant negligently failed so to do and as a result of such negligence plaintiffs' child was killed, etc. (It is true that the fore part of instruction 1 hypothesized the fact that defendant parked his southbound truck on the east or wrong side of the street in violation of specified ordinances but the instruction thereafter ignored the ordinance violations in hypothesizing proximate negligence.)

Defendant's instruction 6 was: "The court instructs the jury that if you find and believe from the evidence that the deceased infant was not sitting on the east curb of Forest Avenue at the time defendant backed his truck upon and over him, then your verdict must be for the defendant Mr. Postlewait, regardless of any other fact or circumstance shown in evidence."

Plaintiffs contend the trial court erred in giving that instruction for several stated

reasons, but, as we understand the burden of their contention, it is that the instruction permitted no recovery if the jury found that Ricky was not sitting on the curb at the time the truck backed, even though the jury might have believed also that defendant negligently ran over the boy.

■ Plaintiffs chose by instruction 1 to require the jury to find as prerequisite to a plaintiffs' verdict that while Ricky was sitting on the east curb of Forest the defendant backed his truck upon and over him. Instruction 6 told the jury that if it found Ricky was not sitting on the east curb at the time defendant backed his truck upon and over him, its verdict would be for the defendant. It is well established that defendant was entitled to such a true converse instruction which exactly conversed an essential element of plaintiffs' instruction. Schaefer v. Accardi, Mo., 315 S.W.2d 230, 234 [8, 9].

■ Plaintiffs say they were deprived of a fair and impartial trial because of the alleged failure of veniremen to answer fully on voir dire. As we understand, plaintiffs argue that because they are Negroes, the eleven members of the jury (who we assume were white) who decided for the white defendant, must have been prejudiced against the plaintiffs because of their race, else the jury would have found for plaintiffs. There is no semblance of a basis for any such contention in the record. Plaintiffs' counsel asked on voir dire whether any panel member was prejudiced because of the fact that Negroes claimed damages against a white defendant. By his silence each panel member indicated he had no such prejudice. As noted, defendant's verdict was supported by substantial evidence. There was no fact or circumstance giving rise to a possible inference that because of a defendant's verdict racial prejudice must have existed.

■ Plaintiffs' counsel inquired on voir dire whether panel members were acquainted with the various lawyers in defendant's counsel's law firm and a juror (later foreman) indicated that he did not know any of those lawyers. Plaintiffs attached an affidavit to their new trial motion to the effect that the foreman did not truthfully answer the question propounded in that he concealed pertinent facts concerning his social relationship with a lawyer in that firm, and that the lawyer and the jury foreman had appeared on the same Shrine program and had attended rehearsals therefor. In a counteraffidavit the juror in question asserted that he did not know the lawyer; that he had been informed that the lawyer was a member of a certain Shrine and was to appear on a certain program; that he had had no connection with the lawyer on the program or at the rehearsals therefor, and had never seen the lawyer to know him; and that the fact that he was on the same program as was the lawyer (along with many others) did not affect the juror's decision in the case. At a hearing on motion for new trial, plaintiffs' counsel adduced a copy of the Shrine program which contained the names, among many others, of the lawyer and the juror. No other evidence was adduced.

There is nothing in the record to support plaintiffs' assertion that the juror concealed pertinent facts and, furthermore and in any event, the trial court reasonably could have found from the affidavits before it that, irrespective of all else, the juror did not intentionally conceal any information on voir dire and thus the trial court did not abuse its discretion in overruling plaintiffs' motion for new trial on the stated ground. Hornberger v. St. Louis Public Service Co., Mo., 353 S.W.2d 635, 642.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.