L. J. LINDNER and Mrs. L. J. Lindner, Appellants,

v.

Earl SAWYER, Respondent.

No. 50682.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

John L. Keusenkothen, and R. P. Smith, Cape Girardeau, for appellants.

Finch, Finch, Knehans & Cochrane, Jack O. Knehans, Cape Girardeau, for respondent.

STOCKARD, Commissioner.

In plaintiffs' suit for $25,000 damages for the wrongful death of their minor son the jury verdict was for defendant and plaintiffs have appealed.

On June 11, 1963, Michael Lindner, then three days less than nine years of age was playing with his sister in the yard of his home when Mr. Harry Thompson, Jr., a rural mail carrier, stopped at the mailbox across the road. Michael went to the edge of the road and waited for an automobile to go by. At the time the mail carrier was still at the Lindner mailbox. According to his sister Michael looked both ways and then started walking across the road. As Mr. Thompson pulled away from the mailbox he met defendant driving north in his automobile, and when the two automobiles were "practically equal" and about ten or fifteen feet from the mailbox, Mr. Thompson heard the sound of the brakes on defendant's automobile. The left front portion of defendant's automobile struck Michael and soon thereafter he died from the injuries received. Mrs. Lindner, Michael's mother, testified that defendant told her that Michael "started to cross the road and he got part of the way across the road, and if he would have stayed there * * * he wouldn't have hit him, * * * he seemed to freeze in the road and he ran back in front of the car." Mr. Herbert Riehn, a deputy sheriff, testified that defendant told him that he "saw the boy come out on the road, he thought he was going

on across, that he more or less froze in the middle of the road, he thought he turned back in front of the car." Mr. Riehn also testified that his estimate of the length of skid marks made by defendant's automobile was 125 to 150 feet, and that the point of impact was "about midway of the skid marks." Mr. Thompson had not seen Michael before he was struck by defendant's automobile.

Plaintiffs' case was submitted to the jury on primary negligence of the defendant in failing to maintain a vigilant watch and lookout.

■ The first point in plaintiffs' brief is that the trial court erred in excluding the testimony of Herbert Riehn "as to observations and measurements made at the scene of the collision" because he had participated in making the measurements.

Plaintiffs apparently have reference to the following incident. Mr. Riehn, a deputy sheriff, arrived at the scene and assisted a highway patrolman in making measurements of skid marks. He was asked what was his "best recollection" as to the length of the skid marks. Counsel for defendant then asked a "qualifying" question as to whether his testimony would be "based upon your own knowledge by measurement or is it based upon what the trooper measured and put in his report," and Mr. Reihn replied that his answer would be "based on the trooper's report." The trial court then sustained an objection to the question on the ground that it was hearsay. Later Mr. Riehn testified that his "recollection" was that "from the starting of the skid marks to the impact and from the impact to where the [defendant's] car came to a stop was just about half the distance, I mean, the entire distance divided in half, * * *." He was then asked what the entire distance was, and in reply to another "qualifying" question he stated that his testimony would not be based on his own knowledge and information but "it would be on the trooper's report." The court again sustained an

objection on the ground of hearsay. These rulings were proper. In addition, we note that immediately thereafter the witness testified without objection that his best estimate was that the skid marks were "from 125 to 150 feet." No prejudicial error to plaintiffs resulted from this incident.

Plaintiffs' next point is that the trial court erred in refusing to submit to the jury their requested instruction on humanitarian negligence based on defendant's failure to stop, slacken speed, swerve and sound a warning.

■ There is no evidence whatever concerning the speed of defendant's automobile, and neither is there any evidence from which a jury could reasonably determine when Michael came into a position of imminent peril. "It is only when imminent peril arises that the humanitarian rule seizes upon the then existing situation, in effect '*blotting out primary or antecedent negligence*,' Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930, and imposes a duty *thereafter* to exercise the required degree of care to avoid the threatened injury." Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, 673. The defendant was not called by plaintiffs as an adverse witness, and the only other persons who were nearby and who saw anything pertaining to the accident were Mr. Thompson who made no mention of the speed of defendant's automobile and stated that he never saw Michael prior to the time he was struck, and Michael's sister, Helen, who was back in the yard and gave no testimony concerning the location or speed of defendant's automobile. On cross-examination she stated that she did not see defendant's automobile before the accident and did not see it hit Michael. The only testimony bearing on the time when Michael entered a position of imminent peril was that of Mrs. Lindner and Mr. Reihn who stated, as previously set out, that defendant told them that Michael ran or came out on the road, then "froze," and then ran or turned back into the path of the automobile. No distances

are shown, and as previously noted, there is no evidence of the speed of the automobile. While it is evident that Michael at some time entered a position of imminent peril because he was struck by the automobile, "in order to impose liability on [defendant] under the humanitarian rule, it is necessary that the evidence also show that [defendant], after receiving actual or constructive notice of the imminent peril, then 'had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others,' and that he failed to exercise the required care to avert such injury." Davis v. Quality Oil Company, supra, at p. 674; Shirley v. Norfleet, Mo., 315 S.W.2d 715.

In this case, any finding as to when and where Michael came into a position of imminent peril would be "pure speculation, guess and conjecture," see Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 871, and only by conjecturing as to when he came into and was in imminent peril could the jury have found that *thereafter* the defendant had the present ability, with the means at hand, to have averted the impending injury to Michael without injury to himself and others. See Vietmeier v. Voss, Mo., 246 S.W.2d 785. It necessarily follows, assuming the requested instruction on humanitarian negligence otherwise was correct, that the trial court did not err in refusing to submit it to the jury.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, and HENLEY, JJ., vice FINCH, J., concur.