Carmello MIGNECO, Appellant,

v.

Fred E. ECKENFELS, Respondent.

No. 51072.

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1965.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 10, 1966.

Murphy & Roche, Byron A. Roche, St. Louis, for appellant.

Carter, Fitzsimmons & Brinker, Bernard C. Brinker, Clayton, for respondent.

EAGER, Presiding Judge.

This is an action for personal injuries sustained in an automobile collision. Mr. Eckenfels originally filed the suit against Mr. Migneco and the latter filed his counterclaim for personal injuries in the sum of $35,000. Thereafter, the original plaintiff's cause was dismissed upon stipulation and, upon motion and an order of court, the parties were "redesignated" so as to make Migneco the plaintiff and Eckenfels the defendant. Such an order is somewhat unusual but, since the case has proceeded on that basis we shall acquiesce, considering Migneco as the plaintiff. The verdict was for defendant and plaintiff has appealed.

The collision occurred on September 30, 1961, at about 2:45 p. m. Plaintiff was driving a 1958 Ford north on Kingston Avenue in St. Louis County and defendant was driving a 1956 Buick south on the same street with his wife and her sister as passengers. Both were approaching (at varying distances) the "T" intersection of Southampton Drive, a 26-foot wide street which turned off to the west. Kingston was 44 feet wide, having four eleven-foot lanes. By expert testimony and a plat it was shown that there was a crest on Kingston several hundred feet north of Southampton and that the downslope extended for another 100–200 feet to the south; there were stabilized shoulders on both sides of Kingston; its surface was asphaltic concrete. The day was overcast, but the witnesses disagreed as to whether the surface was damp, dry, or wet.

Plaintiff testified in substance: that the road was damp, but nearly dry; that he was driving north in the outside lane, having no intention of turning at Southampton; that he had been traveling at 35–40 miles an hour, but had slowed some because the brake lights of a car about 200 feet north came on; that he then saw defendant's Buick coming across the yellow center line "right to me"; that he swung hard to his left and stopped at an angle, with most of his hood over the center line; that the Buick did not change its speed, did not swerve, and continued to come toward him "kind of straight" until it hit the right side of his car, the impact being from the front door to the rear fender; that the Buick was about 150 feet away when he first saw it and about 100 feet away when he stopped; that he could not estimate its speed but it was "fast"; that there was no other car in front of him except the one about 200 feet north. Plaintiff was rendered unconscious and suffered substantial injuries. Photographs in evidence show crushing damage to the right side of plaintiff's car from the windshield

to the rear fender. Plaintiff testified also that the impact was in the northbound lane next to the center line; that he did not skid, and that he was not making a left turn.

Defendant Eckenfels testified: that it was drizzling and the road was wet; that he was driving at all times in the southbound curb lane; that plaintiff's car came out from behind a car which was stopped in the inner northbound lane at Southampton with its left-turn light on; that defendant was "right north of Southampton" when he first saw plaintiff; that he was traveling between 30 and 35 miles an hour and applied his brakes, but could not say if he skidded; that at the time of the impact plaintiff's car was "across both south bound lanes," but was moving broadside toward him; that he did not change from the curb lane before the collision, or swerve; that he was still in the curb lane when the collision occurred, and he does not recall whether his car slowed up; he had no idea how far he traveled after he saw plaintiff, nor could he state his stopping distance. The impact occurred at or just south of the Southampton intersection and the cars came to rest on the west shoulder, entirely off the pavement. Defendant's car was admittedly in good mechanical condition prior to the collision.

A consulting engineer, Edward W. Bilhorn, prepared plats which were received in evidence, and testified from a considerable experience concerning stopping distances. His testimony was, in substance, that on a dry pavement a 1956 Buick could be stopped at 30 miles an hour on this street and on its maximum slope in 95–100 feet, and at 35 miles an hour in 120 feet; on a damp pavement, in 125 feet and 135–140 feet, respectively; on a wet pavement, in 132 and 175 feet, respectively; all of those figures included reaction times. He also testified that as the slope flattened out, as was the situation for about 150 feet north of Southampton, a car could be stopped in a shorter distance than stated.

A county policeman, Harry Wilde, testified that the cars were resting partly on a lawn and partly on the shoulder just south of Southampton; that defendant made an oral statement that "I came over the hill and the car was sideways in the street in my lane, and I couldn't stop or avoid him"; that plaintiff stated: "A car stopped in front of me, I slid on the pavement." Defendant, in his deposition, admitted his statement to the policeman, but did not recall it at the trial; plaintiff denied, at the trial, making his. This witness also testified that when he got there (some time after the accident) it was raining, and that plaintiff was lying on the ground; that "according to the report," the debris was found in the center of the southbound lane which was next to the center line, and within the boundaries of Southampton (extended).

Walter J. Rutkowski, a witness who was driving some distance behind plaintiff, testified: that plaintiff was driving in the northbound lane nearest the center line; that plaintiff's car hesitated, then started to make a left turn; that the Buick was about 125 feet away at that time, but that he did not know the distance between them when the Ford started across the center line; that the witness pulled over to the right and stopped; that he saw no signal from the Ford, but that it continued to move slowly and that the collision occurred with the Ford traveling about five miles an hour. This witness apparently testified at first (and it is not entirely clear) that the impact occurred at the "dividing line" between the two southbound lanes, "just after he gets across that line"; later he said that the collision was in the curb lane. He also testified that the Buick was traveling at about 30 to 35 miles an hour when he first saw it; that the pavement was *dry*. In concluding, he stated that in his best

judgment the Buick was 100–125 feet north of Southampton as the Ford started its left turn at the south curb line of that street, and that the Buick would then have been 125–150 feet north of the Ford; and, finally, he stated again that the collision occurred just as the Ford started across the dividing line between the two southbound lanes. This witness did not mention the presence of any other car.

It was developed that plaintiff was blind in his right eye. Defendant's wife, riding with him, testified that she felt an application of the brakes of the Buick, but not so "forceful" as to cause her to turn around (she was talking to the back seat passenger) and look. There was other evidence which is not material to our issues here.

Plaintiff submitted his case solely on humanitarian negligence in failing to stop or swerve; his Instruction No. 3 hypothesized that as the cars were approaching each other, plaintiff turned his Ford to the left "and across the center line * * * when defendant's Buick automobile was approximately 125 to 150 feet north," that thereafter plaintiff became and was in a position of imminent peril, and that defendant saw or should have seen plaintiff in such position in time, etc., to have stopped or swerved and thus have avoided the collision. The verdict having been for the defendant, plaintiff's instruction is concededly not an issue on this appeal. We note here, however, that it did not hypothesize the precise point or traffic lane in which the impact occurred.

Plaintiff's single point on this appeal is the supposed error in giving defendant's Instruction No. 4, which was as follows: "The Court instructs the jury that if you find and believe from the evidence that defendant, Fred Eckenfels, was driving his Buick automobile in a southwardly direction on Kingston Drive at or near its intersection with Southampton Avenue, and if you further find that defendant at all times drove his automobile in the right-hand or curb lane for southbound traffic and if you

find that the collision occurred in the curb lane for southbound traffic then plaintiff is not entitled to recover and your verdict will be in favor of the defendant, Fred Eckenfels."

As to that instruction, plaintiff says that the instruction gave the jury a "roving commission," did not hypothesize sufficient facts to constitute a defense, and that it created a false issue. Basically, the contention is that the instruction ignored the charge that defendant was negligent in failing to *stop* and thus did not converse the two elements of plaintiff's disjunctive submission; also, that it did not converse any essential factual element of plaintiff's submission, for he had not elected to hypothesize the precise lane in which the collision occurred, and was not required to do so. Plaintiff seems to concede that the instruction conversed the submission of a negligent failure to swerve, presumably because, if defendant remained in the curb lane, there was no possible need to swerve on plaintiff's evidence. This seems somewhat fallacious to us since a collision *did* occur and, on defendant's own evidence, it occurred in the curb lane. However, we shall pursue that proposition no further. Defendant has really conversed as though plaintiff had, in Instruction No. 3, hypothesized the place of the collision as at or near the center of the street. Defendant seeks to establish first, that plaintiff did not make a submissible humanitarian case; and, secondly, that if he did, Instruction No. 4 was not erroneous.

We consider first defendant's contention that plaintiff did not make a submissible humanitarian case. That question must be considered in view of all the evidence, since defendant did not stand on his motion for a directed verdict at the close of plaintiff's case; and plaintiff is entitled to have the evidence viewed in its light most favorable to him (Justice v. East St. Louis City Lines, Inc., Mo., 375 S.W.2d 150), including the favorable in-

ferences from his own case, as well as those parts of defendant's case which are favorable to plaintiff. This rule, however, is subject to the oft-stated exception that plaintiff may not have the benefit of evidence which is at war with his own fundamental theory. Woods v. Dalton, Mo.App., 331 S.W.2d 132, 139; Davis v. Quality Oil Co., Mo., 353 S.W.2d 670; Pijut v. St. Louis Public Service Co., Mo., 330 S.W.2d 747. And, generally, a plaintiff may not adopt the testimony of a witness (defendant's or plaintiff's) which contradicts his own positive testimony on basic facts which are within his own knowledge. Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618. But if the plaintiff's testimony consists of estimates of speed, distances, time or position, he is not conclusively bound thereby, and may avail himself of other testimony, whether it be that of his own witness or his opponent's. Williams v. Ricklemann, Mo., 292 S.W.2d 276; Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24; Stout v. St. Louis County Transit Co., Mo.App., 285 S.W.2d 1; McDonough v. St. Louis Public Service Co., Mo., 350 S.W.2d 739; Reifsteck v. Miller, Mo., 369 S.W.2d 229.

■ We must determine whether the testimony of the defendant and of his witness Rutkowski on estimates of speed and distance was available to plaintiff. The plaintiff testified that his car was stopped with most of its hood across the center line in the inner southbound lane, but with the remainder of the car remaining in the inner northbound lane. Since, concededly, the damage to the car was on the right side back of the windshield, this would place the main force of the impact in the northbound lane but immediately next to the center line and possibly impinging upon it. The police officer placed the debris in the *inner* southbound lane. The *substance of Rutkowski's testimony* was (although he did make the statement that the collision occurred in the southbound curb lane) that the impact actually

occurred substantially on the line between the two southbound lanes, and defendant's own testimony, in at least one place, tended to corroborate that fact. In this conflicting welter of testimony plaintiff elected, for strategic reasons, not to hypothesize the exact lane or point of the collision. Perhaps this is somewhat unusual, but the method has been used before, Welch v. McNeely, Mo., 269 S.W.2d 871, and, since the jury determines *when* a plaintiff comes into a position of imminent peril, such a submission is permissible if all other requirements of the doctrine are satisfied. Defendant's contentions possibly embrace the suggestion that plaintiff made no submissible case on the failure to swerve; if so, it is not advanced with any great enthusiasm and, on that subject, we merely note that this was a four-lane road with no other cars nearby (on plaintiff's testimony) and that there was a clear view from the top of the hill several hundred feet away. On plaintiff's evidence defendant continued to come *at him* from a point 150 feet away, within which distance he certainly would have had the ability and the means to swerve either to the right or to the left.

■ The sufficiency of the proof on the charge of negligence in failing to *stop* is somewhat more complicated. Plaintiff did not testify to defendant's speed, merely saying that it was "fast"; that, of course, is a relative term and hardly a statement of a fact. Defendant placed his own speed at between 30 and 35 miles an hour when he saw plaintiff and applied his brakes, and expressed no opinion whatever as to how far away he then was. The final "best judgment" of witness Rutkowski was that defendant's Buick was from 125–150 feet north of plaintiff's Ford when the latter started across the center line (being 100–125 feet, plus the width of Southampton); he also estimated the speed of the Buick at 30–35 miles an hour when he first saw it. Plaintiff testified that when his car stopped, which obviously was *after* he first saw the Buick (if so) coming

across the center line, his Ford was "about one hundred feet" from the Buick, which then continued to come on toward him. We conclude that plaintiff's statements of speed and distance were estimates at most, and that he is entitled to the benefit of the favorable testimony of defendant and Rutkowski on *these subjects,* though not on the place of impact. We doubt that plaintiff's submission on a negligent failure to stop need even be limited by that evidence, for on plaintiff's evidence defendant had a clear and unobstructed view of the Ford from the top of the hill several hundred feet away. However, on the expert testimony, holding plaintiff to his own factual statement of a "damp" pavement, defendant could have stopped, at the greatest percent of slope and at either 30 or 35 miles an hour, in from 125 feet to 140 feet (an average of 132½ feet), and in a somewhat lesser distance in the last 150 feet north of Southampton (which was precisely the location here in question), probably five feet less; thus, we arrive at a net stopping distance of 120–135 feet, or an average (between 30 and 35 miles) of 127½ feet. This, we conclude, constituted substantial evidence from which the jury might reasonably have concluded that defendant could have stopped after he saw or should have seen the plaintiff in a position of imminent peril. Defendant does not contend, as we understand, that the evidence was insufficient to show a position of imminent peril; the question was when and where that was reached, which was the jury's prerogative. We hold that the jury here could reasonably have found the existence of imminent peril from plaintiff's testimony, in which he stated that he started across and did cross, the center line of the street to *avoid* defendant's car which, he said, was then coming and continued to come directly at him. Defendant also suggests, in passing, that if he were guilty of any negligence on plaintiff's theory, then it was primary negligence, citing Lane v. Wilson, Mo. App., 390 S.W.2d 943, and Davis v. Qual-

ity Oil Co., Mo., 353 S.W.2d 670. In Lane, the defendant had swerved and stopped and obviously could not have been guilty of humanitarian negligence thereafter; in Davis, the defendant had swerved into another lane and the evidence showed no possibility of humanitarian negligence thereafter. We conclude that the evidence here justified a humanitarian submission, both on failure to swerve and failure to stop. We recognize, of course, that a case may not be submitted on mere possibilities or conjecture, Lane v. Wilson, Mo.App., 390 S.W.2d 943, but this is not such a case.

■ We come now to the question of the propriety of Instruction No. 4, which directed a verdict for defendant if he, at all times, remained in the southbound curb lane. Defendant says that this was a converse of an essential element of plaintiff's case, and that such an instruction is proper. Lucas v. Blanks, Mo., 362 S.W.2d 736; Liebow v. Jones Store Co., Mo., 303 S.W. 2d 660; Welch v. McNeely, Mo., 269 S.W. 2d 871; Schaefer v. Accardi, Mo., 315 S.W.2d 230. The principle is well recognized. Defendant's specific argument here seems to be that he hypothesized a state of facts which conversed an essential element of plaintiff's case, namely, that the plaintiff was in imminent peril *in the inner northbound lane*; and thus, that if his Buick was and remained elsewhere there could have been no imminent peril and no liability on plaintiff's theory. The difficulty with this argument is that plaintiff did not so hypothesize his submission, and defendant must converse a basic element of plaintiff's *submission.* Compare, Rollins v. Postlewait, Mo., 358 S.W.2d 828, where the exact position of the injured child was hypothesized in plaintiff's instruction and the converse was held proper. Even so, the essentiality of the element there conversed is questioned in Martin v. Sitz, Mo. App., 381 S.W.2d 609, 614–615. The opinion in the Martin case contains a rather full discussion of what constitutes an "essential element" for the purpose of a con-

verse instruction; and it must be such an element as is prerequisite to a recovery. In Frechin v. Thornton, Mo., 326 S.W.2d 122, defendant conversed an element which plaintiff had elected to submit, though otherwise it might not have been essential, i. e., turning across the center line ahead of plaintiff after stopping or slackening suddenly. See also Rollins v. Postlewait, supra.

■ Here, a collision did occur, and in some one of three locations; plaintiff did *not* elect to hypothesize the exact location; the propriety of his instruction is not an issue here. Plaintiff could have been found to be in imminent peril under his own testimony. More specifically, the plaintiff, in his evidence, his theory and his submission, charged defendant with a negligent failure to stop. Instruction No. 4, when considered on defendant's own theory and under his evidence, completely ignored the charge of a failure to stop; even if the jury found that the impact occurred in or near the curb lane, defendant had no right to so ignore that charge and submission. The failure to swerve and the failure to stop were submitted in the disjunctive, and a verdict may not be directed without a consideration of both; the negligent violation of either duty, if found, was sufficient to support a verdict. What defendant really did here was to converse the precise place of the collision, which was not a submitted element, and therefore not a basic essential of plaintiff's case. The instruction was misleading and, since the jury apparently believed defendant's evidence as to the place of collision, it would naturally have been led by the instruction to disregard entirely defendant's asserted opportunity and ability to *stop*, whether in the curb lane or otherwise. We hold that the instruction was prejudicially erroneous.

The judgment is reversed and the cause remanded for a new trial.

All of the Judges concur.