Genevieve BIEHLE, Plaintiff-Respondent-Appellant,

v.

Robert Ray LaCHANCE, Defendant-Appellant-Respondent.

Nos. 31947, 31993.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied May 23, 1966.

Application to Transfer Denied July 11, 1966.

William L. Mason, Jr., Galena, for defendant-appellant-respondent.

Earl R. Blackwell, Hillsboro, for plaintiff-respondent-appellant.

WOLFE, Presiding Judge.

This is an action brought by the widow of Gilbert H. Biehle. Biehle was killed

when the automobile which he was driving was struck by the automobile which the defendant was driving. The plaintiff sought the sum of $25,000 in damages and obtained a verdict and judgment for $15,-000. After an unavailing motion for judgment in accordance with his motion for a directed verdict made at the close of plaintiff's case or in the alternative for a new trial, the defendant appealed.

The collision occurred on Highway 21 which runs in a general north and south direction. It is intersected from the east by Vineland Road and it was at this intersection that the automobiles collided. Mr. Biehle, husband of the plaintiff, was driving a 1951 Plymouth. He had gone south on Highway 21 to the Vineland Road intersection. He turned left across the northbound lane of 21 to enter Vineland Road and before clearing the northbound lane of 21 his automobile was struck by the defendant's automobile which was traveling north on Highway 21. Mr. Biehle, who was alone in his car, suffered a broken neck from which he died without regaining consciousness.

The only witness called to testify regarding the collision of the two cars was a State Highway Patrolman. Some questions and answers from a deposition given by defendant, Mr. LaChance, were offered and read to the jury. Photographs of the highway were also introduced. The plaintiff, Mrs. Biehle, testified, but not about the collision as she did not witness the occurrence. All of the testimony and evidence offered was in the plaintiff's case as the defendant stood upon his motion for a directed verdict.

Highway 21 to the south of Vineland Road is straight and level. It is a two-lane highway about twenty-two feet wide, providing one lane for southbound traffic and one for northbound traffic with each lane approximately eleven feet in width. The photographs show that a short distance north of the intersection the highway turns sharply west into a curve which would obscure southbound traffic from one travel-

ing northwardly. On June 2, 1963, the day of the occurrence, the weather was clear and the road dry. For about a quarter of a mile one, traveling northwardly on 21, would have a clear view of the road ahead up to the intersecting Vineland Road. The defendant stated in his deposition that he was driving a 1960 Plymouth which was in good condition. As he traveled northwardly on 21 he saw the car operated by Mr. Biehle coming south in the lane for southbound traffic approaching the intersection of Vineland Road.

Mr. Biehle's car was about ten feet north of the intersection when the defendant first noticed it. The car "hesitated for a moment" at the intersection and then turned to its left to go into Vineland Road. The defendant estimated that his own car was about 130 to 132 feet from Biehle's car when its left front wheel crossed into the northbound lane of 21. The defendant stated that Mr. Biehle, looking straight ahead, drove into the northbound lane at an unvarying speed which he estimated to be between five and ten miles per hour. The defendant stated that his own car skidded 130 to 135 feet into collision with Mr. Biehle's car when Mr. Biehle's car was still about three feet short of clearing the northbound lane.

The defendant stated that he was traveling at fifty miles per hour at the time Biehle's car started into the northbound lane. In another part of the deposition he said that he was traveling at a speed of forty to fifty miles per hour, and later that his speed was forty-five to fifty miles per hour. In another question and answer read he said that his speed was about twenty-five miles per hour at the time of the collision. He also testified that his own car was five or five and one-half feet in width.

The following questions and answers from a deposition by LaChance were read:

"Q  Could you tell us, considering the conditions out there that day, the dry level pavement just as it was that day as you have described it,

your car, considering the tires you had on it, the condition of your brakes, can you tell us in what distance, going at a speed of 45 miles an hour, that you could have brought your car to a stop?

"A  No, not exactly.

"Q  Can you estimate it for us?

"A  About 150 foot.

"Q  Can you tell us, bearing in mind that same question, in what distance it would have taken you to bring your car to a stop at 50 miles an hour?

"A  About 165 to 70 foot."

The patrolman, who arrived shortly after the accident and while the ambulance which moved Biehle was still there, stated that LaChance gave his speed at fifty miles per hour. He also said that there were skid marks made by the right tire of LaChance's car up to the point of collision that measured 133 feet in length. The skid mark of the right wheel was unbroken and started at about one foot, seven inches within the northbound lane and angled off to four and one-half feet from the edge of the northbound lane at the point of the collision. Both cars were off the highway after the collision.

The case was submitted upon the humanitarian theory of negligence. It conjunctively required a finding of failure to stop, slacken speed and to swerve. The defendant contends that no submissible case was made on any of the charges of negligence submitted.

The plaintiff conversely asserts that she made a submissible case on defendant's failure to stop and to slacken speed. She maintains that defendant's statement that he could stop in 150 feet from a speed of forty-five miles per hour was proof that he could have stopped or slackened his speed in time to have avoided striking Biehle's car. She predicates this upon the fact that LaChance had the normal reaction time of three-fourths of a second and that therefore he must have been forty-eight feet beyond the start of the skid marks as Biehle's car entered the intersection. This is a fallacious conclusion. LaChance was never asked to take into consideration his reaction time in estimating the stopping distance. He was never asked where or at what time he started to apply his brakes. He was traveling as stated between forty-five or fifty miles per hour as he approached not only the intersection but also a curve in the highway ahead of him and a short distance beyond the intersection. Biehle's car hesitated at the intersection and the only logical conclusion that can be reached from the evidence is that LaChance had applied or started to apply his brakes before Biehle started across the northbound lane.

■ LaChance estimated his distance from the intersection at that time to be 130 feet to 132 feet. His skid marks were measured and found to be 133 feet long. Inasmuch as he skidded at a slight angle it seems apparent that he was approximately 133 feet away at the time his brakes were fully applied. Since he stated that it was at that distance that Biehle started to cross the northbound lane the only conclusion that can logically be reached is that his brakes were fully applied at the time Biehle entered the zone of peril. Plaintiff introduced the testimony of LaChance and, with certain exceptions not here present, she is bound by that testimony unless it is contradicted by other testimony that the plaintiff may introduce. Baum v. Abel, Mo.App., 379 S.W. 2d 164 and cases therein cited. Here LaChance's testimony was not contradicted. There is no evidence that he could have stopped or further slackened his speed, for with the brakes fully applied he was still traveling at twenty-five miles per hour at the point of collision.

■ In reaching the above conclusions and in passing upon the question as to whether or not the plaintiff made a submissible case of failure to swerve, we are mindful of the fact that we must consider

the evidence in the light most favorable to the plaintiff. The plaintiff may have the benefit of the favorable portion of the defendant's testimony and may use it with other favorable evidence in the case. Here we have little more than the defendant's uncontradicted evidence. For the proposition that the defendant could have swerved to the left and avoided the collision the plaintiff relies on defendant's statement that Biehle's car was about three feet short of clearing the northbound lane at the time it was struck. It is contended that as the northbound lane was eleven feet wide and that Biehle's car was about three feet short of clearing the lane there remained a space of eight feet in the northbound lane through which the defendant could have driven his car, which was five to five and one-half feet wide, without crossing into the southbound lane.

■ It is established law that a defendant, after receiving actual or constructive notice of the imminent peril of the other party, must have had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Yarrington v. Lininger, Mo., 327 S.W.2d 104. All we have is the uncontradicted evidence that the defendant did slacken his speed and did swerve. He swerved to the right rather than to the left. At the time he swerved Biehle's car was directly ahead of him entering the northbound lane, and to defendant's left was a southbound lane for oncoming traffic. Under such circumstances it would appear that he chose the course that any motorist would have chosen under the same circumstances.

■ It may be possible that if La-Chance had been able to nicely calculate the speed with which Biehle would proceed to cross he could have turned left and passed behind Biehle's car. However, the plaintiff had the duty to make her case, to remove it from the field of conjecture and establish it by substantial evidence of probative value or by inferences reasonably drawn from the evidence. Vietmeier v. Voss, Mo., 246 S.W.2d 785. Evidence that some other course than that taken by the defendant would *possibly* have averted the accident was not enough and did not meet 'the quantum of proof required of the plaintiff. Shaw v. Griffith, Mo.App., 291 S.W. 2d 230; Bauman v. Conrad, Mo.App., 342 S.W.2d 284; Allen v. Hayen, Mo., 320 S.W.2d 441. In Breshears v. Myers, Mo., 266 S.W.2d 638, 1. c. 640, the Missouri Supreme Court stated when considering a somewhat similar situation:

"* * * As the situation developed it probably would have been better if he had changed its course to the left. However, as we said in Vietmeier v. Voss, Mo.Sup., 246 S.W.2d, loc. cit. 789, where it was contended that the defendant therein who attempted to avoid the plaintiff by swerving, should have sounded his horn: 'Inasmuch as in the available time it was possible to do only one of the two things, and defendant did do one of those two things, it was not negligence for defendant not to have done the other thing.' * * *"

■ In summary, the evidence presented is simply void of any proof that the defendant was negligent in any of the respects with which he was charged and plaintiff failed to make a case properly submissible to the jury. The judgment is therefore reversed.

RUDDY, J., and J. MORGAN DONELSON, Special Judge, concur.

ANDERSON, J., not participating.