Elizabeth MARTIN, Plaintiff-Respondent,

v.

Virgil James SHERRELL, a minor, by his guardian ad litem, James N. Otis, Defendant-Appellant.

No. 8572.

Springfield Court of Appeals.

Missouri.

June 27, 1967.

Northern & Crow, Rolla, for defendant-appellant.

Jay White, Rolla, for plaintiff-respondent.

STONE, Presiding Judge.

In this jury-tried action at law, plaintiff Elizabeth Martin sought $5,000 for personal injuries and $200 for property damage to her 1954 Chevrolet sedan al-

leged to have resulted from a collision with a 1955 Chevrolet sedan driven by defendant Virgil James Sherrell, then seventeen years of age, on a graveled country road near Rolla, Missouri, just before sundown on October 4, 1964. By a nine-man jury verdict, plaintiff was awarded $125 for personal injuries and $175 for property damage; and, from the judgment entered on that verdict, defendant appeals.

Plaintiff's petition charged humanitarian negligence in that defendant allegedly could and should have averted the collision "by swerving his automobile to its right, or by applying the brakes of his said automobile." Since the only evidence on that subject was that defendant did apply the brakes on his automobile prior to the impact, leaving skid marks approximately ninety-three feet in length, the sole assignment submitted to the jury was that of humanitarian negligence for defendant's failure to swerve to his right; and the single issue for determination on this appeal is whether plaintiff made a submissible case on that assignment. Plaintiff's counsel called the two parties and plaintiff's physician as witnesses, introduced two photographs showing the damaged portions of the vehicles, and then rested. Defendant stood on his motion for a directed verdict at the close of plaintiff's case.

At the outset, we recognize and reiterate the broad general principle that, in determining whether a submissible case was made, the reviewing court must consider the evidence in the light most favorable to plaintiff and must accord to her the benefit of all supporting inferences fairly and reasonably deducible from the evidence [DeLay v. Ward, 364 Mo. 431, 439, 262 S.W.2d 628, 633(3); Price v. Nicholson, Mo. (banc), 340 S.W.2d 1, 4–5(1), 95 A.L.R.2d 599; Appelhans v. Goldman, Mo., 349 S.W.2d 204, 208(8)], subject however to the sensible qualifications and limitations that this calls for consideration of all the facts shown by plaintiff and not merely a part of them isolated from the remainder,

and does not require the court to supply missing evidence, or to disregard the dictates of common reason and accept as true that which, on the whole record, obviously is not true, or to give plaintiff the benefit of inferences other than reasonable ones [Kirks v. Waller, Mo., 341 S.W.2d 860, 863(3); Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 600(1); Holland v. Lester, Mo.App., 363 S.W.2d 75, 80], and does not accord to plaintiff the benefit of defendant's evidence which is contrary to her own or at war with her fundamental theory of the case. Migneco v. Eckenfels, Mo., 397 S.W.2d 682, 686; Pijut v. St. Louis Public Service Co., Mo., 330 S.W.2d 747, 752; Fisher v. Gunn, Mo., 270 S.W.2d 869, 873–874; Pettus v. Dubman, Mo.App., 389 S.W.2d 373, 374(3); Gudorp v. City of St. Louis, Mo.App., 372 S.W.2d 483, 484.

In approaching a factual review of the record at hand, we observe preliminarily that the evidence was egregiously meager, scant, and besprinkled with meaningless generalities and confusing contradictions, which worked the unfortunate result of shrouding salient details in ambiguity, uncertainty and obscurity. The "traveled portion" of the east-west country road, on which the accident occurred, was approximately fifteen feet in width, with "two tracks * * * down the road right in the middle." The point of collision was "at the front of," "right in front of * * or near the front of" plaintiff's home which, as opposing counsel agree *dehors the record,* is on the north side of the road. The *westbound plaintiff,* "coming in home" with her son eight years of age, had just ascended "a long hill" with the setting sun "directly in my [plaintiff's] face as I come up the hill." Her home and driveway were "on the level" at the crest of the hill, but the record does not disclose whether the driveway entered the yard at a point east or west of the house. The *eastbound defendant,* accompanied by a girl fourteen years of age, had ascended the other side of the hill and had reached the crest, traveling at a speed of thirty-five to forty miles per hour, when

he sighted plaintiff's approaching automobile "approximately a hundred feet" distant. *Defendant's* version of subsequent developments was singularly succinct and (within the record) utterly incomprehensible. "I swerved to my *left* [the north] and I applied my brakes and tried to avoid her [plaintiff] * * * 'cause she was on *her left* [the south side] of the road and it was *my right* of the road," but the impact was between the *left* front fender of defendant's automobile and the *left* rear fender of plaintiff's automobile. When they came to rest, defendant's automobile was "just about in the middle [of the road]—not quite," and plaintiff's automobile "was a way in her driveway, knocked over in the ditch"—"off on her land there," *north* of the road.

*Plaintiff's* testimony was no more definite, complete or satisfactory. Her counsel states, *dehors the record*, that she was "about to enter her driveway." However, the only testimonial statement pertaining to that was plaintiff's laconic "yes" to the leading question, "now, you was just coming in home with your little boy—"; and no effort was made to show the relative position of either vehicle with reference to the driveway at any given time. Furthermore, there was no evidence concerning the width of the driveway or the entrance thereto, from which any inference could have been drawn as to whether or not a motorist would have found it necessary to make a wide turn into the driveway from the opposite or south side of the road.

According to plaintiff, her speed "prior to the accident * * * was under twenty miles an hour." As to when she first saw defendant's approaching automobile, her initial response was "well, just a few minutes prior to it [the accident]." But, when subsequently asked "how far was his car down the road or up the road from you at the time that you seen him," plaintiff responded "oh, about thirty-five foot." We note particularly that plaintiff offered no information as to the position of her automobile in relation to the imaginary center line of the fifteen-foot roadway either when she first sighted defendant's approaching automobile thirty-five feet distant or at any time prior thereto, and that, with respect to the location of plaintiff's automobile after she first sighted the other vehicle, her statements were confusing and contradictory. First, she explained that "I seen it [defendant's automobile] coming and I tried, you know, to get over to my right [north side of road] as far as I, you know, could get * * * I got over as far as I could get to clear the road to give him time, you know, to get by." Later, when her counsel inquired where her automobile was at the time of impact, she said even more emphatically that "my car was over to the right off of the road." But in the meantime she had stated that the impact had occurred in "the center of the road." So her counsel, then obviously puzzled and confused even as we now are, pressed for an explanation, "how did he hit your car in the center of the road if * * * your car was off the road," and elicited this reply which certainly did nothing to dispel the obfuscation, "well, he [defendant] pulled—as he's coming down the road, you know, a good clip of speed, well, he just * * * hit me after I, you know, got off as far as I could get." Apparently despairing of elucidation, counsel agreed, "well, you was as far over as you could get at the time of the impact," and received his client's simple affirmation.

In 1954, our Supreme Court thought it a matter of common knowledge "that the distance from the center of one front tire to the center of the other front tire on plaintiff's Chevrolet automobile was about 4½ feet." Fisher v. Gunn, Mo., 270 S.W.2d 869, 873(1). And although we do not profess to know judicially the precise width of the body of a 1954 Chevrolet such as instant plaintiff was driving, we think it a matter of common knowledge within our ken that the overall width of her automobile was less than six feet. Hence if, as the only evidence on this

point showed, the collision occurred in "the center of the [fifteen-foot] road," obviously plaintiff's automobile could not have been at the time of impact either off the road or as close as possible to plaintiff's right (the north) side of the roadway. And if, as she said, she first sighted defendant's automobile when it was thirty-five feet distant, there would have been insufficient time and space for any *material* change in the position of her automobile relative to the imaginary center line of the roadway prior to the impact. For, even at fifteen miles per hour (she estimated her speed as having been "under twenty miles an hour") she would have been traveling 22 feet per second and her automobile would have moved 16.6 feet in the average reaction time of three-fourths second assumed in the absence of evidence on this subject [Roach v. Lacho, Mo., 402 S.W.2d 344, 350(10); Koogler v. Mound City Cab Co., Mo., 349 S.W.2d 233, 237(6)]; and, although the speed of thirty-five to forty miles per hour at which defendant's automobile had been traveling was in the process of deceleration, the *two* meeting vehicles undoubtedly would have closed an intervening distance of thirty-five feet within a minor fraction of a second *after* plaintiff's reaction time of three-fourths second had elapsed. Yet, the unmistakable import of plaintiff's testimony was that she had turned further to her right (the north) side of the road *after* she had sighted defendant's automobile. Of course, plaintiff was not conclusively bound by her estimates of time, speed or distance [Meier v. Moreland, Mo., 406 S.W.2d 97, 101(4); McDonough v. St. Louis Public Service Co., Mo., 350 S.W.2d 739, 744(3)], but the foregoing is illustrative of the state of the record before us.

The photograph of plaintiff's automobile indicates that the initial point of contact on that vehicle was on the rear part of the left rear door just in front of the left rear wheel, and the nature and extent of damage, insofar as inferable from the photograph (and there was no testimony on that subject), suggests that the left front of defendant's automobile struck a sharply angling, and by no means a broadside, blow. However, the record is utterly void of any showing as to the specific direction in which either vehicle was moving at the moment of impact.

We have not overlooked plaintiff's statements that "he didn't try to avoid hitting me; he coulda, you know, got his car over to the right * * * I'd say he'd have four foot to get over." But, without further extending this discussion by including the series of questions and answers into which the quoted statements were dropped gratuitously, suffice it to say that, in their context, those statements were enigmatic and unintelligible even to plaintiff's own counsel, as demonstrated by the fact that immediately after the last quoted statement he asked, "well, now, what do you mean by that," and thereby afforded his client an opportunity to compound the confusion in this wise, "well, I imagine that it's the distance between two cars," which was quickly stricken as an imaginative concept and was followed by no further effort on the part of counsel to determine the sense and meaning of the statements under consideration.

The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484; Anderson v. Prugh, 364 Mo. 557, 565, 264 S.W.2d 358, 364(8); Hastings v. Coppage, Mo., 411 S.W.2d 232, 236. "The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 160, 213 S.W.2d 420, 421(2); Kelley v. St. Louis Public Service Co., Mo., 248 S.W.2d 597, 602; Wilson v. Toliver, 365 Mo. 640, 654, 285 S.W.2d 575, 583(13). And it is only when such imminent peril arises that the humanitarian doctrine, blotting out antecedent negligence, seizes upon the then exist-

ing situation and imposes the duty *there-after* to exercise proper care to avoid inflicting the threatened injury. Ornder v. Childers, Mo., 327 S.W.2d 913, 916(3); Kinealy v. Goldstein, Mo.App., 400 S.W.2d 438, 444(3); Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930(3).

*When* and *where* plaintiff came into a position of imminent peril were matters of prime importance. Although it is true that the precise time when, and place where, one comes into a position of imminent peril are for determination by the triers of the fact [Welch v. McNeely, Mo., 269 S.W.2d 871, 876(10); Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 593; Stith v. St. Louis Public Service Co., 363 Mo. 442, 450, 251 S.W.2d 693, 698(7), 34 A.L.R.2d 972], nevertheless the burden rested on plaintiff to adduce substantial evidence of probative value from which the jury fairly and reasonably might have found when and where she (plaintiff) did, in fact, come into such position of imminent peril. Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109(7); Shirley v. Norfleet, Mo., 315 S.W.2d 715, 723(5); East v. McMenamy, Mo., 266 S.W.2d 728, 731–732(5).

Another indispensable prerequisite to defendant's liability under the humanitarian doctrine was that, after he knew or should have known of plaintiff's position of imminent peril, he (defendant) then had the present ability with the means at hand to have averted the impending harm without injury to himself or others. Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, 497(6); West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, 52(5); Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 871(8); Lane v. Wilson, Mo.App., 390 S.W.2d 943, 949(8); Glenn v. Offutt, Mo.App., 309 S.W.2d 366, 369(5).

The plaintiff in a humanitarian case, as in other actions, must establish every essential element of his theory of submission by substantial evidence of proba-

tive value or by inferences reasonably deducible therefrom [Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787(1); Harmon v. Thompson, Mo.App., 226 S.W.2d 102, 104(1)], and a judgment for plaintiff on a humanitarian submission may not stand where it rests upon speculation, conjecture and surmise [Hastings v. Coppage, supra, 411 S.W.2d at 237(9); Yeaman v. Storms, 358 Mo. 774, 779, 217 S.W.2d 495, 499; Davis v. McClanahan, Mo.App., 262 S.W.2d 65, 68(2), 69(4)], either with respect to the basic element of plaintiff's position of imminent peril [Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Kasten v. St. Louis Public Service Co., Mo.App., 266 S.W.2d 1, 4(3)], or with respect to defendant's ability, after notice thereof, to have averted the accident with the means at hand. Stephens v. Thompson, Mo., 293 S.W.2d 392, 395(7–9); Meese v. Thompson, 344 Mo. 777, 783, 129 S.W.2d 847, 850; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683–684(6–7); Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 670–671(5–8).

"A humanitarian negligence case involving moving automobiles necessarily involves speed and distance or position of the cars, and ability to avert, sufficiently definite in each respect that they may be combined as an intelligible whole. When one is lacking, the picture is not complete, for the plaintiff is required to prove every element of her case. And when these essential elements do not, in and of themselves, mesh together in making a physically factual situation of liability, we cannot, simply because the collision occurred, aimlessly and without evidence in support, slide the time, distance [position] and speed back and forth or [supply] lengthen or compress them, in the hope of making them fit together somehow by the hazard of guess." Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 359(7, 8).

Considering the evidence before us in the light of the stated principles, did instant plaintiff make a submissible case of humanitarian negligence for defendant's

alleged failure to swerve to the right? We think not. Plaintiff's testimony was so confused, contradictory, obscure and incomplete as to indicate her lack of knowledge concerning the salient facts [cf. Ewen v. Spence, Mo.App., 405 S.W.2d 521, 525], and defendant's testimony was so abbreviated and condensed as to leave the end result, i. e., an angular contact between the *left* front fender of his automobile and the *left* rear fender of plaintiff's automobile in "the center of the road," wholly unexplained and unexplainable within the record. On the evidence adduced, the triers of the facts could not have reconstructed the accident or even followed the course of either vehicle prior to the impact, and any finding either as to the time when and the place where plaintiff came into a position of imminent peril or as to defendant's ability with the means at hand *thereafter* to have averted the impending harm without injury to himself or others by swerving to his right necessarily could have rested on nothing more tangible than sheer speculation, rank conjecture and unadulterated guesswork. Lindner v. Sawyer, Mo., 388 S.W.2d 896, 899; Vietmeier v. Voss, supra, 246 S.W.2d at 789(10), 790; Biehle v. LaChance, Mo.App., 403 S.W.2d 936, 939(4, 5); Harrellson v. Barks, supra, 326 S.W.2d at 359(6–9).

The judgment for plaintiff cannot stand; but, in view of the state of the evidence pertaining to the issue of liability, we are of the opinion that the ends of justice would be served by remanding the case for a new trial on that issue. However, we are directed that "[u]nless justice requires otherwise * * * no new trial shall be ordered as to issues in which no error appears." V.A.M.R. Rule 83.13(c); V.A. M.S. § 512.160(3). And, although the mere fact that no complaint has been made concerning the amount of the verdict and no error has been alleged pertaining to the assessment of damages does not require that retrial be limited to the issue of liability only and does not entitle defendant-appellant to such limitation as a matter of right [Artstein v. Pallo, Mo. (banc), 388 S.W.2d 877, 882(6)], we are satisfied that in the case at bar a retrial on the issue of liability only can be had without prejudice or injustice to plaintiff. Grissom v. Handley, Mo.App., 410 S.W.2d 681, 691(21); Thompson v. Gray, Mo.App., 415 S.W.2d 299, 307(12). Accordingly, the judgment for plaintiff on the issue of liability is set aside and the cause is remanded to the circuit court for retrial on that issue only; and, if upon such retrial that issue shall be found for plaintiff, the court shall enter judgment for her in the sum of $300 against defendant.

HOGAN and TITUS, JJ., concur.